IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TRENTON L. MCCORKLE,

                        Plaintiff,

        v.                                                    OPINION and ORDER

MEGAN T. NEU,                                                  24-cv-605-jdp

                        Defendant.

---

Plaintiff Trenton L. McCorkle, proceeding without counsel, alleges that a medical assistant at Dodge Correctional Institution, defendant Megan T. Neu, conducted an improper intake assessment because she disregarded risk that he would fall from a top bunk due to mental health problems. McCorkle is proceeding on an Eighth Amendment claim for damages based on the conscious disregard of his safety.

Neu moves for summary judgment. Dkt. 26. Even if McCorkle asked Neu to provide a low bunk or a top bunk with safety railings, the undisputed facts show that Neu lacked the authority to provide that accommodation. McCorkle faults Neu for not escalating his concerns to other medical professionals, but he says that she raised them with the intake nurse, who had the authority to provide that accommodation. In any case, McCorkle hasn't shown that he would have received that accommodation even if Neu had escalated the matter, so he cannot show that Neu's failure injured him. I will grant the motion and close the case.

UNDISPUTED FACTS

I begin with a word about McCorkle's summary judgment opposition. On summary judgment, this court requires the moving party, here Neu, to set out a statement of proposed

facts with citations to admissible supporting evidence. *See* the attachment to Dkt. 18 at 2–4. The party opposing the motion, here McCorkle, must state whether each fact is disputed, and if it is, support the opposition with a specific citation to admissible evidence. *Id.* at 3–5. The court cautions the parties that it won't search the record for evidence that supports their contentions. *Id.* at 1, 3, 5. If the party opposing the motion proposes additional facts, he must follow the same procedures. *See id.* at 3. If a response to a proposed fact relies on inadmissible evidence or otherwise does not comply with the court's procedures, the court takes the original factual statement as true and undisputed. *Id.* at 8. All litigants must comply with the court's orders and rules. *See Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 349 (7th Cir. 2020).

McCorkle's opposition to Neu's proposed facts doesn't comply with the court's summary judgment procedures because he fails to cite admissible evidence to support his disputes. *See* Dkt. 39. McCorkle's own proposed facts have the same problem. *See* Dkt. 43.

Neu's proposed facts are properly supported with admissible evidence so, with limited exceptions, I will accept them as undisputed. *See Allen-Noll*, 969 F.3d at 349; *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1177–78 (7th Cir. 2001). I will not accept Neu's proposed facts as undisputed if they are directly contradicted by specific factual statements for which McCorkle has personal knowledge contained in his submissions signed under penalty of perjury. *See McDaniel v. Syed*, 115 F.4th 805, 814–16 (7th Cir. 2024); Fed. R. Civ. P. 602.

With that background, the following facts are undisputed except where noted.

Neu is a medical assistant at Dodge Correctional Institution (DCI), which houses the central reception center for Wisconsin's prison system. Within 24 hours of admission to DCI, a nurse and medical assistant will complete an intake screening of a prisoner to identify any

medical or psychological issues that may require additional attention. *See* Dkt. 49 (Neu's reply in support of her proposed facts) ¶ 6. The intake questions are not comprehensive; they serve to flag any issues for nursing staff and the advanced care provider.

When the medical assistant is finished with intake screening, which takes five to ten minutes, the prisoner goes to the nurse's office. The nurse reviews the screening materials and answers any questions that the prisoner may have. Within two weeks, an advanced care provider sees prisoners for more thorough intake physical examinations.

McCorkle arrived at DCI on May 22, 2024, and Neu saw him for intake screening. As the medical assistant, Neu does not look at a prisoner's previous medical records during intake; she uses only the screening questions. Neu entered McCorkle's medications into his chart, but she says that she did not know what conditions the medications were prescribed to treat. *See id.* ¶¶ 21–23.

McCorkle says that he informed Neu of his psychological history. Dkt. 41 (McCorkle's declaration) ¶¶ 2, 7, 10, 16. Specifically, McCorkle says that he told Neu that he took two medications for post-traumatic stress syndrome (PTSD) and night terrors, and two other medications for PTSD and schizophrenia. *See* Dkt. 42 ¶¶ 2–3; Dkt. 44 ¶¶ 3–4. McCorkle also says that he told Neu that these conditions made him "toss and turn all night long" and that he needed to be assigned to a low bunk because he had previously fallen from the top few a few times. Dkt. 43 ¶ 4; Dkt. 44 ¶ 3. According to McCorkle, Neu told him that she was not assigning him to a low bunk and to raise his concerns at his appointment with the advanced care provider. Dkt. 43 ¶ 4.

During intake screening, Neu completed a fall-risk assessment. McCorkle answered each question negatively, though he says that the questions applied only to the risk of falling while

walking. *See* Dkt. 49 ¶ 22. Neu says that if McCorkle had expressed concerns about falling out of bed, she would have made a notation in his chart. Dkt. 28 ¶ 25. Neu did not make any notation about McCorkle needing a low bunk. *See* Dkt. 49 ¶ 26. Nothing about how McCorkle presented or what he said made Neu think that she should note that he needed a low bunk. *Id.* ¶ 27. If a prisoner asks Neu a question, such as how to be assigned to a low bunk or receive another accommodation, Neu advises him that she cannot answer his question or order accommodations and directs him to the nurse.

Neu has no authority to provide a low bunk. As a medical assistant, Neu cannot diagnose or treat patients, or order, determine, or assess whether someone needs a low bunk. Neu's medical education did not include assessing or diagnosing fall risks based on reported mental health issues.

After Neu completed intake screening, McCorkle saw nurse Elizabeth Barzyk, who noted that he had a history of schizophrenia. Barzyk did not note any immediate concerns about McCorkle's mental health, such as noticeable depression, agitation, anxiousness, or hopelessness, or that he needed a low bunk. *See id.* ¶¶ 31–32. McCorkle says that he told Barzyk about his mental health problems and that he needed a low bunk. Dkt. 42 at 3. McCorkle also says that Neu told Barzyk that he had requested a low bunk based on mental health problems and concerns about falling. *See id.* at 2–3.

If indicated by an examination during intake, nursing staff may provide a prisoner with a low bunk on a short-term basis. After that, an advanced care provider must place a request with the special needs committee to see if the prisoner qualifies for that medical restriction. *See* Dkt. 49 ¶ 33. DCI does not have bed railings for use in top bunks. *See id.* ¶ 34.

4

ANALYSIS

McCorkle is proceeding on an Eighth Amendment claim based on the conscious disregard of his safety based on the allegation that Neu refused to assign him to a low bunk or, alternatively, a top bunk with safety railings. Dkt. 11 at 2. McCorkle adds that, based on this failure, he fell from a top bunk six days after admission at DCI. *See id.* at 1–2.

The obvious problem is causation. To establish that Neu is personally liable under 42 U.S.C. § 1983, McCorkle must show that she "caused the deprivation" of his Eighth Amendment rights. *See Ortiz v. City of Chicago*, 656 F.3d 523, 539 (7th Cir. 2011). So Neu cannot be liable under the Eighth Amendment "if the remedial step was not within [her] power." *See Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012).

McCorkle faults Neu for refusing to assign him to a low bunk, but it's undisputed that Neu lacks that authority. Nevertheless, McCorkle contends that her authority to provide that accommodation "was implied" based on her alleged refusal to provide a low bunk. *See* Dkt. 42 at 2. That's not reasonable inference; a prison official's refusal to provide an accommodation does not suggest by itself that she has the authority to provide it. *See Loc. 1545, United Mine Workers of Am. v. Inland Steel Coal Co.*, 876 F.2d 1288, 1292 (7th Cir. 1989) (courts consider only "reasonably drawn" inferences in favor of the nonmoving party when deciding summary judgment motions). Other undisputed facts confirm that Neu lacked the authority to assign McCorkle to a low bunk. As a medical assistant, Neu cannot diagnose or treat patients, or order, determine, or assess whether someone needs a low bunk. And her medical education did not include assessing or diagnosing fall risks based on reported mental health issues. McCorkle's inference that Neu could provide a low bunk based on her alleged refusal to do so is purely speculative and would be insufficient to support a reasonable jury finding that Neu

5

had that authority. *See Flowers v. Kia Motors Fin.*, 105 F.4th 939, 946 (7th Cir. 2024) ("[S]peculation is insufficient to defeat a summary judgment motion.").

Alternatively, McCorkle faults Neu for failing to assign him to a top bunk with safety railings, but it's undisputed that DCI does not have bed railings for use in top bunks. McCorkle suggests that DCI staff could obtain bed railings from Waupun Correctional Institution, but he hasn't explained how he has personal knowledge of this matter. *See* Dkt. 49 ¶ 34.

McCorkle faults Neu for failing to tell Barzyk and other medical professionals that he requested a low bunk based on concerns that his mental health problems could cause him to fall. *See* Dkt. 43 ¶ 6; Dkt. 44 ¶ 47. McCorkle's theory, apparently, is that if Neu had escalated this request, another medical professional would have assigned McCorkle to a low bunk, thus preventing him from falling. *See id.*

The Eighth Amendment prohibits prison officials from consciously disregarding an excessive risk to prisoner health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 833, 837 (1994). To prevail, McCorkle must show that (1) he faced an objectively serious risk of harm that (2) Neu consciously disregarded. *See id.* at 837. I will assume for purposes of this opinion that McCorkle's mental health problems and stated sleeping difficulties created a serious risk that he could fall from a top bunk and injure himself. The issue is whether Neu consciously disregarded that risk.

Conscious disregard requires that Neu is subjectively aware of that risk. *See id.* That means that Neu knew of facts from which the inference could be drawn that a substantial risk of serious harm existed, and she actually drew that inference. *See id.* Conscious disregard involves intentional conduct, or reckless conduct "so dangerous that the deliberate nature of the defendant's actions can be inferred." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

The Supreme Court has compared the conscious disregard standard to criminal recklessness. *See Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015). Negligence, even gross negligence, does not violate the Eighth Amendment. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

To decide the issue of conscious disregard, I will accept the truth of McCorkle's statements that: (1) he asked Neu to assign him to a low bunk based on concerns that his mental health problems could cause him to fall from a top bunk; and (2) Neu reported those concerns to Barzyk. But these facts don't show that Neu disregarded McCorkle's concerns; according to McCorkle, she reported them to Barzyk. And it's undisputed that Barzyk had the authority to assign McCorkle to a low bunk on a temporary basis.

But even if McCorkle could show that Neu consciously disregarded his risk of falling, he could not overcome summary judgment. To prevail, McCorkle must also show that Neu's failure to take greater action to ensure that he received a low bunk actually injured him. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).

McCorkle faults Neu for failing to escalate his request for a low bunk with Barzyk and other medical professionals. But McCorkle says that Neu told Barzyk that he requested a low bunk, and that he gave Barzyk the same information. Dkt. 42 at 2–3. Therefore, on McCorkle's version the facts, Barzyk knew about his concerns and still failed to assign him to a low bunk. Along similar lines, McCorkle says that none of the other medical professionals who knew about his requests for a low bunk provided that accommodation. *See* Dkt. 43 ¶ 8. So, even if Neu had escalated McCorkle's request in some other manner, it's purely speculative to infer that those efforts would have led to McCorkle being assigned to a low bunk. *See Flowers*, 105 F.4th at 946. No reasonable juror could find that Neu's failure caused McCorkle actual injury.

McCorkle also contends the other medical professionals consciously disregarded his need for a low bunk. But McCorkle is proceeding on a conscious disregard claim against Neu only; I denied his last-minute motion to amend. *See* Dkt. 47. "[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *See Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012). I will grant Neu's motion and close the case.

ORDER

IT IS ORDERED that:

1.  Defendant Megan T. Neu's motion for summary judgment, Dkt. 26, is GRANTED.

2.  The clerk of court is directed to enter judgment and close the case.

Entered June 4, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

8